**SO ORDERED.**

**DONE and SIGNED December 5, 2014.**



_____
JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | } | |
| | } | CASE NO. 14-10896 |
| TIGER AXLES, INC. | } | |
| | } | CHAPTER 11 |
| DEBTOR | } | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND ORDER UNDER 11 U.S.C. § 1129 CONFIRMING
DEBTOR'S PLAN OF REORGANIZATION**

Tiger Axles, Inc., the Debtor, filed its Plan of Reorganization Dated October 17, 2014 (the Plan) with the Court on October 19, 2014, and its Disclosure Statement Dated October 17, 2014 (the Disclosure Statement) with the Court on October 17, 2014. Copies of the Plan and the Disclosure Statement and Notice of Voting and Objection Deadlines and of the hearing on the Disclosure Statement Final Approval and Plan Confirmation were timely transmitted to all holders of claims and interests and to the United States Trustee, and a hearing on confirmation of the Plan was held on December 3, 2014. After considering the Plan and the objections filed thereto, the evidence and testimony, the record of this case and the statements of counsel;

## THE COURT HEREBY FINDS AND DETERMINES AS FOLLOWS

1. That every person or entity required to receive notice of the hearing on confirmation of the Plan and of the hearing on the adequacy of the Disclosure Statement received timely and adequate notice thereof.

2. That the Plan complies with all applicable provisions of the Bankruptcy Code. That the Debtor has complied with all applicable provisions of the Bankruptcy Code.

3. That the Plan has been proposed in good faith and not by any means forbidden by law.

4. That all payments made or to be made by the Debtor in connection with the case, or in connection with the Plan, have been approved by the Court as reasonable, or will be subject to approval by the Court prior to payment.

5. That with respect to each impaired class of claims, the holder of a claim in each impaired class has accepted the Plan and will receive or retain under the Plan on account of the claim property of a value, as of the effective date of the Plan, that is not less than the amount that the holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan. No holder of a secured claim has made an election under Section 1111(b)(2) of the Bankruptcy Code.

6. That all holders of claims and interests impaired under the Plan have been given adequate opportunity to vote to accept or reject the Plan. Holders of allowed impaired claims in classes 1, 2, 3, 4 and 5 have accepted the Plan within the meaning of Section 1126(c) of the Bankruptcy Code. Class 6 is unimpaired within the meaning of Section 1124 of the Bankruptcy Code and is conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code.

7. That except to the extent that the holder of a particular claim has agreed otherwise, the Plan provides that: (a) with respect to a claim of a kind specified in Section 507(a)(1) or (a)(2) of the

Bankruptcy Code, on the effective date of the Plan, the holder of each claim will receive on account of the claim cash equal to the allowed amount of the claim; and (b) with respect to Section 507(a)(8) tax claims or Secured Tax Claims that would otherwise fall under the definition of 11 U.S.C. § 507(a)(8), the Plan provides that those Claims will be paid over a period not more than 5 years from the Petition Date.

8. That at least one class of claims of the Debtor that is impaired under the Plan has accepted the Plan, as determined without including the acceptance of the Plan by any insider of the Debtor holding a claim in the class. Moreover, the classes of impaired claims that have accepted the Plan are classes 1, 2, 3, 4 and 5, and those five classes constitute all impaired classes.

9. That confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor.

10. That all fees payable under 28 U.S.C. §1930, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all fees as required by Section 1129(a)(12) of the Bankruptcy Code.

11. That the Disclosure Statement meets the requirements of Section 1125 of the Bankruptcy Code. The Debtor has filed the Disclosure Statement in good faith with reasonable care and diligence, and has not knowingly or negligently included in the Disclosure Statement any materially misleading or erroneous statements or representations.

12. That the solicitation of acceptances of the Plan by the Debtor was in good faith.

13. That the Debtor and all holders of claims and interests are bound by the Plan within the meaning of Section 1141 of the Bankruptcy Code.

14. That the Plan is fair and equitable to all parties-in-interest, including the Debtor, all unsecured creditors, all secured creditors, and all interest holders.

15. That circumstances warrant the Debtor's Immaterial Amendment (LAWB #101) to its Plan of Reorganization Dated October 17, 2014 regarding the cure, assumption and performance of the CIT Finance LLC Unexpired Lease; that all other claims and interests are neither materially nor adversely affected by the Debtor's proposed immaterial amendment to its Plan of Reorganization Dated October 17, 2014; and that the said plan does not require re-noticing or re-voting.

Based upon the findings and determinations listed above,

**IT IS HEREBY ORDERED THAT**:

1. The Disclosure Statement (LAWB #89) which was <u>conditionally approved</u> is hereby <u>finally approved</u> pursuant to Section 1125(f) of the Bankruptcy Code.

2. The Plan, a copy of which is annexed hereto as Exhibit A which has been immaterially amended pursuant to Debtor's Motion to Immaterially Amend its October 17, 2014 Plan, a copy of which is annexed hereto as Exhibit B, be, and hereby is, confirmed.

3. The Debtor is hereby discharged from each debt or claim that arose against the Debtor prior the date of this Order, whether or not a proof of claim based upon the debt or claim is filed or deemed filed in the case, whether or not a claim is allowed, and whether or not the holder of a claim has accepted the Plan; provided that nothing in this Order or in the Plan shall operate as a discharge of the Debtor from claims, obligations, or liabilities to be paid or performed under the Plan or any agreement executed in conjunction with the Plan.

4. The provisions of the Plan, and all documents executed in conjunction with the Plan, and this Confirmation Order are, as of the effective date of the Plan, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them.

5. The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

6. The rejection of executory contracts and unexpired leases as provided in the Plan are hereby approved.

7. Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and properly if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known address.

8. The stay in effect in this case pursuant to Section 362(a) of the Bankruptcy Code is hereby dissolved and is of no force or effect as of the effective date of the Plan.

9. The Court shall retain jurisdiction over this case to the extent provided in the Plan.

###

This order was prepared and is being submitted by:
Robert W. Raley & Associates
Robert W. Raley, Bar No. 11082
290 Benton Road Spur
Bossier City, LA 71111
Telephone: 318-747-2230
Facsimile: 318-747-0601
rraley52@bellsouth.net

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | } | |
| | } | CASE NO. 14-10896 |
| TIGER AXLES INC | } | |
| | } | CHAPTER 11 |
| DEBTOR | } | |

**DEBTOR'S PLAN OF REORGANIZATION DATED OCTOBER 17, 2014**

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Tiger Axles, Inc., (the "Debtor") from cash flow from the operations of the Debtor and, if necessary, capital contributions from its equity security holder.

This Plan provides for three classes of secured claims, two classes of unsecured claims, and one class of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately one-hundred cents on the dollar. Each holder of a priority tax claim, if one exists, will be paid upon terms consistent with §1129(a)(9)(c) of the Code  This Plan also provides for the payment of administrative and priority claims in full as of the effective date of this Plan.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one  (If you do not have an attorney, you may wish to consult one.).**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01   Class 1.   The secured claim of Marlin Business ("Marlin # 001"), to the extent allowed as a secured claim under §506 of the Code.

2.02   Class 2.   The secured claim of Marlin Business ("Marlin #002"), to the extent allowed as a secured claim under §506 of the Code.

2.03   Class 3.   The secured claim of the Caddo-Shreveport Sales and Use Tax Commission to the extent allowed as a secured claim under §506 of the Code.

2.04 Class 4. Unsecured Insider Claims allowed under §502 of the Code.

2.05 Class 5. Unsecured Claims allowed under §502 of the Code.

2.06 Class 6. Equity Interest of the Debtor.

## ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE FEES, AND PRIORITY TAX CLAIMS

3.01 **Unclassified Claims**. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02 **Administrative Expense Claims**. Each holder of an administrative expense claim allowed under §503 of the Code, will be paid in full on the effective date of this Plan (as defined in Article VIII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 **Priority Tax Claims**. Each holder of a priority tax claim, if one exists, will be paid upon terms consistent with §1129(a)(9)(c) of the Code.

| Unclassified Priority Tax Claims (name and type of tax) | Estimated Amount Owed | Treatment | |
|---|---|---|---|
| *Caddo-Shreveport Sales and Use Tax Commission* <br><br> *Sales Taxes* | $10,607.51 | Payment Interval <br> Monthly Payment <br> Begin Date <br><br><br> Statutory Rate <br> Total Payout | Monthly <br> $206.67 <br> 5th day of first month following effective date. <br> 3% <br> $11,366.72 |
| *Internal Revenue Service* | $78,811.64 | Payment Interval <br> Monthly Payment <br> Begin Date <br><br><br> Statutory Rate <br> Total Payout | Monthly <br> $1457.57 <br> 5th day of fist month following effective date. <br> 3% (estimated) <br> $80,166.10 |

| Unclassified Priority Tax Claims (name and type of tax) | Estimated Amount Owed | Treatment | |
|---|---|---|---|
| *Louisiana Department of Revenue* | $24,266.15 | Payment Interval<br>Monthly Payment<br>Begin Date<br><br>Statutory Rate<br>Total Payout | Monthly<br>$472.78<br>5th day of first month following effective date.<br>3% (estimated)<br>$26,002.94 |
| *Louisiana Work Force* | $47.99 | Payment Interval | One payment $47.99 on 5th day of month following effective date. |

**3.04** **United States Trustee Fees**. All fees required to be paid by 28 U.S.C.§1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN

| Type | Impairment | Proposed Treatment |
|---|---|---|
| **Class 1–**<br><br>*Secured Claim of Marlin #001* | Impaired<br><br><br><br><br><br><br><br><br><br><br>Estimated Payout<br>$21,796.50 | Marlin #001 holds a secured claim, a financed lease, in the amount of $19,367.53, to be paid with interest on the claim's unpaid principal balance at the rate of 4.75% per annum (*WSJ* Prime + 1.5%) from and after the *Plan's Effective Date*, until paid; payable in 59 consecutive monthly installments of $363.28 each, commencing on the 5th Day of the first month following the Plan's Effective Date, continuing monthly thereafter with one final installment, the 60th monthly payment due under the plan, consisting of the full amount of the unpaid principal balance and all accrued interest remaining due and payable. Marlin will retain its lien on its collateral, welding equipment. |

| Type | Impairment | Proposed Treatment |
|---|---|---|
| **Class 2–** *Secured Claim of Marlin # 002* | Impaired<br><br>Estimated Payout $21,663.41 | Marlin #002 holds a secured claim, a financed lease, in the amount of $19,249.27, to be paid with interest on the claim's unpaid principal balance at the rate of 4.75% per annum (*WSJ* Prime + 1.5%) from and after the *Plan's Effective Date*, until paid; payable in 59 consecutive monthly installments of $361.06 each, commencing on the 5th Day of the first month following the Plan's Effective Date, continuing monthly thereafter with one final installment, the 60th monthly payment due under the plan, consisting of the full amount of the unpaid principal balance and all accrued interest remaining due and payable. Marlin will retain its lien on its collateral, welding equipment. |
| **Class 3–** *Secured Claim of Caddo Shreveport Sales and Use Tax Commission* | Impaired<br><br>Estimated Payout $16,603.53 | The Caddo Shreveport Sales and Use Tax Commission holds a secured claim, a recorded judgment in the amount of $14,922.51, to be paid with interest on the claim's unpaid principal balance at the rate of 4.75% per annum (*WSJ* Prime + 1.5%) from and after the *Plan's Effective Date*, until paid; payable in 54 consecutive monthly installments of $307.47 each, commencing on the 5th Day of the first month following the Plan's Effective Date, continuing monthly thereafter with one final installment, the 55th monthly payment due under the plan, consisting of the full amount of the unpaid principal balance and all accrued interest remaining due and payable. The Caddo Shreveport Sales and Use Tax Commission will retain its judicial lien. |

| Type | Impairment | Proposed Treatment |
|---|---|---|
| **Class 4–** *Allowed Unsecured Insider Claim of Karolyn Walker* | Impaired<br><br><br><br><br><br>Estimated $108,800 plus interest as it accrues at the rate of 4.75% | Karolyn Walker, is an insider of the Debtor. She holds a general unsecured claim in the amount of $108,800.<br><br>On the Plan's Effective Date, Karolyn Walker will receive, in full satisfaction, settlement, release and discharge of her Claim, an Income Bond equal to the amount of her Allowed Unsecured Insider Claim. The Income Bond shall bear interest at the rate of four and three-quarters percent (4.75%) per annum. The Reorganized Debtor shall pay the holder of the Income Bond based on her Allowed Unsecured Affiliate Claim annually an amount equal to one hundred percent (100%) of its "Net Distributable Income" (as defined below) generated during the preceding fiscal year. The term of the Income Bond shall expire in eighteen (18) years. Commencing on the first Periodic Distribution Date, eighteen (18) months following the Plan's Effective Date, and continuing on each Periodic Distribution Date occurring every twelve months thereafter until the Allowed Unsecured Insider of Karolyn Walker Claim has been fully satisfied or the bond expires, whichever comes first.<br><br>The holder of the Income Bond shall be entitled to her share of the Net Distributable Income, if any. For purposes of this Plan, the term "Net Distributable Income" shall mean all income generated by the Reorganized Debtor during its prior fiscal year, less all operating and other expenses, including provisions for income taxes, extraordinary items, costs of goods sold, overhead, capital expenditures made or incurred during said fiscal year, and all payments required by the Confirmed Plan to the holders of Allowed Secured Claims, Allowed Administrative Claims, Priority Claims or General Unsecured Claims. The Reorganized Debtor shall have sole authority to calculate "Net Distributable Income" for purposes of determining distributions. Not earlier than 150 days nor later than 210 days following the end of the Debtor's fiscal year (December 31st), and upon ten (10) days' written notice to the Reorganized Debtor, the holder of the Income Bond shall have the right to inspect the books and records of the Reorganized Debtor during normal business hours at its business office as and where such records are kept in the ordinary course of business. The holder of an Income Bond shall have the right to challenge in the Bankruptcy Court the Reorganized Debtor's calculation of an annual "Net Distributable Income" within 240 days after the end of the Debtor's fiscal year. The Reorganized Debtor's calculation of "Net Distributable Income" shall be sustained by the Court unless it finds that the Reorganized Debtor's calculation was not reasonable.<br><br>The Plan's treatment of the Allowed Unsecured Affiliate Claim in this Class shall constitute a compromise and settlement pursuant to § 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. |

| Type | Impairment | Proposed Treatment |
|---|---|---|
| **Class 5-** *Allowed General Unsecured Claims* **Not Otherwise Classified** | Impaired<br><br>Estimated Payout $358,819.20 | This Class consists of Allowed General Unsecured Claims without priority which are not otherwise classified. The dollar amount of the claims in this class is $309,667.89,<br><br>Commencing on the 5th Day of the first month following the Plan's Effective Date, the Debtor shall pay and distribute the *Debtor's Pro-rata Class 6 Plan Payments, with interest at the rate of 3% per annum,* in the monthly amount of $2990.16. The holders of allowed Class 4 claims shall receive their monthly Pro-Rata Distribution amount over a projected 120 month term, until allowed Class 4 unsecured claims are paid in full. |
| **Class 6–** *Equity Security Holders of the Debtor* | Unimpaired | The Equity Security Holders will retain their interest in the reorganized debtor. |

# ARTICLE V
# ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01** **Disputed Claim**. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02** **Delay of Distribution on a Disputed Claim**. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**5.03** **Settlement of Disputed Claims**. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

# ARTICLE VI
# PROVISIONS FOR EXECUTORY CONTACTS AND UNEXPIRED LEASES

**6.01** **Assumed Executory Contracts and Unexpired Leases**.

(a) The Debtor rejects the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VIII:

The lease of the business/manufacturing premises located at 6711 West 70th Street, Shreveport, Louisiana.

The business/manufacturing premises located at 6711 West 70th Street, Shreveport, Louisiana are owned by Karolyn Walker, and it is anticipated that the premises will be transferred to Matthew Walker within a very short period of time. The Debtor will be allowed to utilize the premises without paying any rent until business operations stabilize. When it becomes financially prudent, the Debtor will begin making reasonable market rate lease payments from net cash flow (see financial projections).

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than (60) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Reorganized Debtor will retain all property of the estate and continue its business operation under the control and management of Matthew Walker, Debtor's sole shareholder who will retain all of his 100 % equity interest in the Debtor. The Plan will be implemented by the restructuring of the Debtor's secured, unsecured and priority debt and the September 15, 2014 cash infusion in the amount of $50,000 and the September 16, 2014 cash infusion in the amount of $20,354.04 made by current sole shareholder Matthew Walker. Business operation expenses and payments established by the Plan will be paid from cash flow from the operations of the Reorganized Debtor and, if necessary, necessary cash infusions from Matthew Walker.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01 **Definitions and Rules of Construction**. The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02 **Pro Rata.** Pro rata means, at any time, the proportion that the face amount of a Claim in a particular Class or Classes bears to aggregate face amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless the Plan provides otherwise.

8.03 **Effective Date of Plan**. The effective date of this Plan is the fourteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

**8.04** **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.05** **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.06** **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.07** **Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Louisiana govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE

**9.01** **Discharge**. On the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in §1141 (d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in §1141 (d)(6)(B).

## ARTICLE X
## OTHER PROVISIONS–JURISDICTION

**10.01** Any other provision of the Plan notwithstanding, if the Debtor defaults on any obligation under the Plan, notice of that default must be given to the Debtor through its attorney, Robert W. Raley & Associates, 290 Benton Road Spur, Bossier City, Louisiana 71111 by certified mail, return receipt requested, and the Debtor shall have forty-five days from receipt of notice to cure the default.

**10.02** Notwithstanding anything contained herein to the contrary, neither Matthew Walker or Karolyn Walker shall be discharged and released from any liability for claims and debts under this plan; however, absent further court order upon notice and hearing, so long as the Plan is not in default, the exclusive remedy for payment of any of claims treated by the Plan shall be payments made pursuant to the Plan. To the extent necessary, any applicable statute of limitations against collection from any third party is specifically tolled from the period of time from the bankruptcy petition date until the date upon which the debtor fails to cure any written notice of default as set forth in the plan.

**10.03** The Court shall retain jurisdiction over the parties to, and the subject matter of, this Plan and all matters related thereto until the Plan has been fully consummated and the case closed, or until the case is dismissed or converted to another chapter of the Code.

EXHIBIT A

Tiger Axles, Inc..
by Matthew Walker, Sole Shareholder

**Robert W. Raley & Associates**

/s/ Robert W. Raley
Robert W. Raley, Bar No. 11082
290 Benton Road Spur
Bossier City, Louisiana 71111
Telephone: (318) 747-2230
Facsimile: (318) 747-0106
Attorney for Debtor


/s/ Jennifer Norris Soto
Jennifer Norris Soto, Bar No. 33301
290 Benton Road Spur
Bossier City, Louisiana 71111
Telephone: (318) 747-2230
Facsimile: (318) 747-0106
Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | } | |
| | } | CASE NO. 14-10896 |
| TIGER AXLES, INC. | } | |
| | } | |
| DEBTOR | } | CHAPTER 11 |

### DEBTOR'S MOTION TO IMMATERIALLY AMEND ITS PLAN OF REORGANIZATION DATED OCTOBER 17, 2014

COMES NOW Tiger Axles, Inc., (the "Debtor"), and herewith files this *Motion to Immaterially Amend its Plan of Reorganization Dated October 17, 2014* and respectfully representing as follows:

1. On April 22, 2014 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing this case. As of the Filing Date, the Debtor was engaged in operating Tiger Axles Inc., an axle and light custom trailer manufacturing facility and retail sales and services business located at 6711 West 70th Street, Shreveport, Louisiana 71129.

2. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor is operating as debtor in possession. No examiner or trustee has been appointed in this case, and no official committee of unsecured creditors has been appointed.

3. The Debtor filed its *Plan of Reorganization Dated October 17, 2014* which is set for a hearing on confirmation on December 3, 2014.

4. Pursuant to 11 U.S.C. § 1127(a), the Debtor may modify its plan before confirmation so long as the plan as modified does not fail to meet the requirements of Sections 1122 and 1123 of the

EXHIBIT B

Bankruptcy Code.

5. The Debtor proposes to Immaterially Amend the Provisions of Plan Article VI, by adding Section 6.02 which affects only the Plan's treatment of the *CIT Finance LLC Unexpired Lease* providing for the lease of telephone equipment (See Claim #7 Claims Register) in the following respects:

> 6.02. Notwithstanding any other terms or provisions of this Plan to the contrary, The Debtor assumes the unexpired lease between CIT Finance LLC and provides adequate assurance that the default in the amount of $6024.96 will be cured.
>
> The Debtor will cure the $6024.96 default in twelve monthly payments in the amount of $502.08 each beginning on January 15, 2014, and continuing monthly thereafter on the same day of each succeeding month up through and including December 15, 2015.
>
> Beginning December 29, 2014, and continuing on the same day each month thereafter, the Debtor will resume making the monthly lease payments each in the amount of $308.21, with such monthly lease payments continuing for the remaining term of the lease.

6. The Plan, as proposed, treated the CIT Finance LLC claim as a Class 5 general unsecured claim in the amount of $19,810.26. Removing that claim from Class 5 does not reduce the pro-rata disbursements to other claim holders. The cure, assumption and performance of the unexpired lease will require the total payment of $18,896.78.

7. Because all other claims and interests are neither materially nor adversely affected by the Debtor's proposed immaterial amendment to its Plan of Reorganization Dated October 17, 2014, the said plan does not require re-noticing or re-voting.

**WHEREFORE**, the Debtor prays that the Court find that circumstances warrant the Debtor's proposed immaterial amendment to its Plan of Reorganization Dated October 17, 2014 regarding the cure, assumption and performance of the CIT Finance LLC Unexpired Lease; find that all other claims and interests are neither materially nor adversely affected by the Debtor's proposed immaterial amendment to its Plan of Reorganization Dated October 17, 2014; and find that the said

plan does not require re-noticing or re-voting;

**FURTHER PRAYS**: that the Court enter an Order approving the Debtor's proposed immaterial amendment to its Plan of Reorganization Dated October 17, 2014; and that the Debtor be granted such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Robert W. Raley
**Robert W. Raley & Associates**
Robert W. Raley, LABN 11082
290 Benton Road Spur
Bossier City, LA 71111
Telephone: 318-747-2230
rraley52@bellsouth.net
**Attorney for Debtor**